## BROSNAHAM ET AL. *vs.* TURNER.[*]

APPEAL FROM THE COURT OF THE NINTH DISTRICT, FOR THE PARISH OF CONCORDIA, THE JUDGE THEREOF PRESIDING.

The decree or judgment of a foreign court, the jurisdiction of which not having been questioned, will be considered conclusive on the matters adjudged by it.

The validity of a legislative enactment of another state or foreign country, where it operates on property within its jurisdiction, or when it authorizes and confirms the acts of its own officers, will not be inquired into by the courts of this state; but its extra territorial effect on rights to immoveable property in this state, will not be tolerated.

Where there is a judgment, execution and sale of property shown, the court will not inquire into the validity of the judgment; and when in the investigation of title a judgment is produced, to which one of the litigants is a party, it cannot be inquired into collaterally.

After the lapse of more than twenty years, a sheriff's sale will be presumed good and valid.

Acts of sale, *sous seing privé*, and not being recorded in the parish where the property is situated, are inadmissible as evidence of title to immoveable property.

This is an action instituted by John Brosnaham, in behalf of his minor child, (Clotilda,) and of Manuel and Francisco

---

[*] This case was decided at the October term, 1839, by judges Martin, Strawbridge and Morphy, and a rehearing was granted, and now finally decided at this term.   Judge Bullard did not sit in the case, having been of counsel.

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.

Villaverde, the two latter free people of color, as the heirs and legal representatives of Antonio Villaverde, who died in Pensacola, the 29th August, 1821, to recover from the defendant a tract of land in the parish of Concordia, containing eight hundred superficial arpents. Villaverde derived title to this land from the Spanish government in 1801, which was confirmed by an act of congress approved the 3d March, 1807, and by a patent which issued to Villaverde or his legal representatives, the 2d November, 1832.

The plaintiffs claim as heirs of Villaverde, under a will purporting to be made and drawn up, from his dictation, by four persons, who state at the foot of the will, that the "said Antonio Villaverde, having been solemnly called and required to say if the within were his deliberate, positive and last intentions, and he declared them to be such. In testimony whereof, we have affixed our names and seals, &c."

John Garnier, Eugene Lavalle and Lorenzo Brue, three of the four persons who subscribed said will, declared on oath, that Villaverde declared to them, and in presence of all the witnesses, that the foregoing instrument contained his last will and testament. This oath was taken before a person signing himself H. M. Brackenridge. His official capacity or character, is not stated. The will is dated the 29th August, 1821.

On the 23d May, 1836, the judge of Escambia county, in the territory of Florida, certifies, that he received the foregoing instrument of writing, from Joseph E. Caro, keeper of the public archives, *as the last will* and testament of Antonio Villaverde, deceased, therefore, the same is admitted to probate, under the act of the Governor and Legislative Council of the territory of Florida, entitled "an act to authorize the county court of Escambia county, to admit to probate the last will and testament of Antonio Villaverde, deceased," approved 4th February, 1836.

John Brosnaham, was under this act duly appointed administrator, with the will annexed, and received letters of administration accordingly. This will was presented to the judge of probates, for the parish of Concordia, and there ordered to be enregistered, and made executory in this state.

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.

The following is the clause of the will under which the plaintiffs claim the land in question. "*Second*, the said Antonio Villaverde, gives and devises all his rights and claims to lands, tenements, &c., which he possesses, or shall be entitled to, within the states of Mississippi, Louisiana, or the territory of Florida, to the lawful children of Dr. John Brosnaham of Pensacola, and to the two mulatto children, Manuel and Francisco above named, equally divided; that is to say, one-half of said rights and claims, and undecided pretentions, to the said children of Dr. Brosnaham, and the other half equally divided between the said Manuel and Francisco, to have and to hold forever; and them to be substituted to all intents and purposes, to all his rights, claims, and privileges whatsoever." The plaintiffs allege, that they claim the tract of land in question under and by virtue of this will, as the only true and legal owners. They, however, state that one George Turner is in possession of said land, which he claims as owner, and pray that he be decreed to deliver it up to them, and that they have judgment for the land, and damages for its detention, together with the rents and profits.

The defendant claims to be owner under a sheriff's sale, as evidenced by the record of a suit, judgment therein, and execution. The sheriff's deed bears date the 10th December, 1814, and was not recorded until the 25th July, 1816, when it was recorded in the parish judge's office.

The record of the suit of *Joseph Petit* vs. *Antonio Villaverde*, under which this tract of land purports to have been sold, consists of a petition to the parish judge signed by his attorney, J. Thompson, claiming one hundred and twelve dollars and fifty cents, but not stating the residence of either plaintiff or defendant. It was filed the 6th June, 1809, on which the parish judge endorsed, " let a summons issue as required and due notification given to the defendant." The affidavit of the plaintiff to the petition is followed by another order of the judge: "Let the defendant be held to bail as the law requires." The parish constable endorses his return on the petition. "Notification given 8th June, 1809."

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.

There is no citation, answer, or appearance of the defendant, or judgment by default in the record. On the 17th November, 1812, the parish judge writes on the petition, "judgment for one hundred and twelve dollar fifty-six cents, and the costs." The next document is the *fieri facias*, under which the land was sold, and an instrument purporting to be a sale of eight hundred arpents of land, described "as situated at Point Pleasant, 75 miles above Vidalia, 10th December, 1814."

The defendant denies that Villaverde ever had any good or legal title to the land ; that if he ever had any, he was legally divested of the same by virtue of a sale of the same by the sheriff of the parish of Concordia, on the 10th day of December, 1814, to satisfy a judgment rendered against him, at the suit of Joseph Petit, before the Parish Court of said parish, and that one Jonathan Thompson became the purchaser of all the said Villaverde's right, title or interest in and to said land, and that he, the said Thompson, afterwards, to wit, on the 13th day of August, 1819, conveyed the same by deed to those from whom this respondent purchased. Thompson sold to Henry Turner, and the defendant G. Turner, claims under him.

The validity of the will is also put at issue, and the capacity and right of the plaintiffs to take as heirs, is specially denied.

At the outset of the case, the defendant's counsel excepted to the right of the plaintiffs to sue, and to their capacity as heirs of Villaverde.

On the other hand, the plaintiffs, by their counsel, excepted to the introduction of the record and papers of the suit of Petit *vs.* Villaverde in evidence, but the exception was overruled.

There was a bill of exceptions taken to the introduction of several private acts of sale to the defendant, from Henry Turner to the defendant in possession. Their admissibility was objected to, on the ground of their not being recorded in the parish where the property was situated. The objections were overruled, and the documents admitted.

There was judgment for the defendant, and the plaintiffs appealed.

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.

This case was argued at the October term, 1839, by *Mr. Elam* and *Mr. Barton*, for the plaintiffs.

*Mr. Stacy* and *Judge Bullard*, argued it on behalf of the defendants.

*Strawbridge, J.*, delivered the opinion of the court.

The plaintiff styling himself administrator, with the will annexed, of one Antonio Villaverde, and suing, also, in behalf of his minor child, (whose name, by an amended petition, appears to be Clotilda S. Brosnaham;) and of Manuel and Francisco Villaverde, free people of color, residing in Florida, allege they are the heirs and legal representatives of the said Villaverde, who died owner of a certain tract of land in the parish of Concordia, which the defendant has illegally taken possession of and retains.

Turner appeared and filed various exceptions, which were overruled, when he answered, denying the *locus in quo*, asserting title, pleading prescription, &c.

Villaverde's title to the land commenced in 1801, under the Spanish Government; he died the 30th August, 1821, having the day before made a will, in which he bequeaths his property to the plaintiffs; the two latter, bearing his name, are therein shown to be his natural children, by a slave belonging to him, to whom he gives freedom; and states that the emancipation of the children had been established before.

Two depositions, which appear to have been intended to prove this will, are annexed, and are sworn to and subscribed before H. M. Brackenridge; but it is not stated in what capacity, or by what authority he acted. They were made in October, 1821; but no probate followed, or was, so far as the evidence goes, attempted until the year 1836. The Legislative Council of Florida, then passed an act, "Entitled an act to authorize the county court of Escambia, to admit to probate the will, &c. of Antonio Villaverde."

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.

The first section provides " That the judge of the county court of Escambia, be, and he is hereby athorized to admit to probate in said court, the last will and testament of A. Villaverde, now on file in the office of the keeper of the public archives of West Florida, and to grant letters testamentary or of administration, with the will annexed ; and to do all matters and things in relation to the last will and testament, as are usual and authorized to be done by the county courts of the territory."

The following document is also annexed :

> " Territory of Florida,   }   " *City of Pensacola.*"
> Escambia County."        }

"Received the foregoing instrument of writing this day, from Joseph E. Caro, Esq., keeper of the public archives, as the last will and testament of Antonio Villaverde, deceased. Therefore, the same is admitted to probate, under the act of the Governor and Legislative Council of the Territory of Florida, entitled an act, &c., 4th February, 1836."

This will was presented to the parish judge of Concordia, under a petition, praying it might be registered and carried into effect. The order of the judge admits the will to be registered in court, according to the prayer of the petition ; this was on the 11th August, 1836.

The defendant, for title, shows that on the 6th June, 1809, one Joseph Petit instituted a suit before the parish court of Concordia, for the sum of one hundred and twelve dollars and fifty-six cents, on which judgment was rendered, the 17th November, 1812. That an execution issued upon said judgment, by virtue of which the tract of land in question was sold to Jonathan Thompson. Thompson sold to Henry Turner, the ancestor of the defendant, in 1819 ; and from the other heirs of Turner it has been attempted to make out title to the defendant.

The cause was tried by a jury, who gave a verdict for the defendant, on which judgment has been rendered, and from which this appeal has been taken. The record bristles with exceptions and objections to all and every thing done, from the year 1801 to the present date.

The probate of the will by the county court of Escambia, and the proceedings of the parish court of Concordia, in the suit of *Petit* vs. *Villaverde*, have been the chief point of contest in argument.

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.

On these matters we have reflected and come to the conclusion, that the decree of the court of Escambia, is a judgment rendered by a foreign court, the jurisdiction of which, not having been questioned, is conclusive with us. Nor can we examine the validity of the legislative act, where it operates on property within their jurisdiction, or authorizes the acts of its own officers. But its extra territorial effect is a different affair, which we protest against admitting, when it comes to operate on the right to real property within the state, or even supposing it to be what plaintiff contends it to be, a mere removal of a personal incapacity. If this incapacity relates to the inheritance of real estate in Louisiana, we are bound to say, they can have no such effect. By the laws of this state, aliens may hold real estate. Let us suppose, that by the laws of Florida they were prohibited from so doing, can it be said that the alien heirs of a man dying in Louisiana, could, by virtue of their capacity in this state, in despite of the laws of Florida, claim his succession there ; or that any legislation of this state could aid them? To propose the question is enough to decide it in the negative.

The decree or judgment of a foreign court,the jurisdiction of which not having been questioned, will be considered conclusive on the matters adjudged by it.
The validity of a legislative enactment of another state or foreign country where it operates on property with in its jurisdiction, or when it authorizes and confirms the acts of its own officers, will not be inquired into by the courts of this state ; but its extra territorial effect on rights to immoveable property in this state will not be tolerated.

An examination into these incapacities, might not, perhaps, reach the whole matter in dispute, and we prefer to proceed to another part of the case.

The nullities alleged against the judgment under which the property was sold, are, principally, that the defendant was not cited ; and that the judgment was rendered, not by default, and then confirmed for want of an answer, but absolutely ; and that it consists merely in these words, on the back of the petition: " Judgment for one hundred and twelve dollars and fifty-six cents, and the costs."

" D. LATTIMORE, Judge."

We cannot say there is no citation. A return is made and endorsed on the petition as follows : " Notification given, June 8, 1809." E. CADWELL, P. C.

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AL.
vs.
TURNER.
Where there
is a judgment,
execution and
sale of property
shown, the court
will not inqure
into the validi-
ty of the judg-
ment ; and when
in the investiga-
tion of title, a
judgment is pro-
duced, to which
one of the liti-
gants is a party,
it cannot be in-
quired into col-
laterally.

It is said by the plaintiff, that Cadwell was parish consta-
ble : Be it so. Whatever defects there may be, there is, at
least, a return of a notification of the suit and a judgment;
and we understand, that where a judgment, execution and
sale are shown, a court will not inquire into the validity of
the judgment.

We are further of opinion that where, in the investigation
of title, a judgment is produced, to which one of the litigants
is party, it cannot be inquired into collaterally.

If he be dissatisfied with it, his remedy is by one of the
modes pointed out for annulling judgments. If authority to
this effect be needed, see 1 *Martin, N. S.*, 1 ; 2 *Idem.*, 301;
6 *Idem.*, 3 ; 2 *Louisiana Reports*, 587 ; 7 *Idem.*, 17 ; *Idem.*,
223.

In the case of *Bailio* vs. *Wilson*, 5 *Martin, N. S.*, 214, it
was held, that where a sale was made pending the appeal,
the execution not being suspended, the purchaser could not
be disturbed by the defendant, even after the judgment had
been reversed. What a comment does this furnish on the
doctrine, that a party to a judgment may attack it collateral-
ly! That case has never, that we know of, been questioned.

If a party suffers his land to be sold under a judgment ap-
pealed from, the purchaser has a good title.

If he neglects to appeal, and his property is sold, he may
at any time object to the judgment, and in any court. We
do not agree to this.

The objections to the execution are, however, open ; it is
said no demand of payment was made ; that it is not shown
the land was within the bailiwick or jurisdiction of the officer;
that the property was not appraised, or advertised, or properly
described.

The return endorsed on the *fi. fa.* is, "I have, this 19th
day of August, 1814, seized eight hundred acres of land,
more or less, at Point Pleasant, about seventy-five miles above
the town of Vidalia, as the property of the within defendant."
                                        "W. WILLIS, Sheriff."

"Land sold to J. Thompson, for one hundred dollars, on
twelve months credit."                        W. WILLIS.

WESTERN DIST.
October, 1840.

BROSNAHAM
ET AT.
vs.
TURNER.

In the sheriff's deed he recites, that this adjudication was made after having exposed the land to sale according to law. Had this been made part of his return, the case would have fallen to the letter within the case of *Lafon* vs. *Smith*, 3 *Louisiana Reports*, 176. But, admitting this makes a difference, we are of opinion, without going to the extent of the judgment, in the case of *Brashear* vs. *Barabino* et al., 8 *Martin*, 641, referred to in the above case, that after a lapse of more than twenty years, if the presumption be not in favor of the sheriff's acts, there are few ancient sales which can be supported. Where is a man, at this day, to look for appraisements, advertisements, &c.

The *sale* is attacked, *first,* "as not reciting the judgment." The sale recites the title of the suit and writ of *fi. fa.*, which recites the judgment. 2d. "It does not state the property to be in the parish of Concordia." It describes it "as situated at Point Pleasant, seventy-five miles above Vidalia." 3d. Does not "conform to the return on the *fi. fa.*"

The particulars of the difference are not set out. We know of no law which, for causes like these, annuls a sheriff's deed.

The deed is further objected to "as not being legally recorded." There is a certificate of the parish judge, expressly stating its acknowledgment, and that it was recorded, July 20, 1816. This recording, it is contended, should have been made by the "clerk of the county court," under the law of 1805. 2 *Moreau's Digest*, 336.

A later law has been overlooked, passed in 1813, which authorized and required such deeds to be recorded in the office of the parish judge : 1 *Idem.*, 702. There are several other exceptions to these documents, which we do not feel it necessary to notice separately, as they go to the effect of the testimony and not to its admissibility.

We conclude that Villaverde's title was divested by these proceedings. We are, however, prevented from confirming the judgment below, by a bill of exceptions, concerning

BROSNAHAM
ET AL.
*vs.*
TURNER.

Acts of sale
*sous seing privé*
and [not being
recorded in the
parish where the
property is situated, are inadmissible as evidence of title to
immoveable property.

which, not a word was said in argument, during the long debate about these matters.

The defendant, in order to show title from Henry Turner, produced four acts of sale, none of which are notarial or authentic. These were excepted to, as not being recorded in the parish where the property is situated.

The judge *a quo* overruled the exceptions and admitted them; no reasons for this are assigned. The *Louisiana Code*, *art.* 2417 provides, "that acts of sale, under private signature, of immoveables, shall have effect against third persons in general, only from the day of their registry in the office of a notary, and the actual delivery of the thing sold." *Art.* 2242 is to nearly the same effect. It appears to us they were improperly received. Though the defendant has shown the property in dispute to be out of Villaverde, he has not shown it to be in himself. We, therefore, reverse the judgment of the District Court, and order that the judgment be entered as one of non-suit, the defendant paying costs in this court, and the plaintiff the costs in the court below.